IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Willie James Poole, #270914, | ) | C/A No. 5:15-05104-TMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Willie James Poole ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 16, 17. On April 26, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 18. On June 6, 2016, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment, ECF No. 24, and on June 16, 2016, Respondent filed a Reply, ECF No. 25. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 17, **be granted**.

I.    Background

Petitioner is currently incarcerated in the Perry Correctional Institution ("PCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2010, Petitioner was indicted at the May term of the Greenville County Grand Jury for armed robbery (2010-GS-23-3428).

App. 246-47.[1] Attorney Tim Sullivan represented Petitioner in a jury trial that convened on April 26, 2011, and Assistant Solicitor Judy Munson represented the State. App. 1. Petitioner was tried before the Honorable Edward Miller. *Id.* After the trial, the jury found Petitioner guilty of the armed robbery charge. App. 195-96. Judge Miller sentenced Petitioner to 25-years imprisonment for the conviction. App. 200.

Appellate Defender Elizabeth A. Franklin-Best represented Petitioner on appeal and briefed the following issue: "Whether the court erred when he did not declare a mistrial when defense counsel improperly elicited prejudicial, and inadmissible, character evidence in appellant's trial for armed robbery?" ECF No. 16-3. Assistant Attorney General Mark R. Farthing filed the Respondent's Brief on the State's behalf. ECF No. 16-4. On June 19, 2013, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion, finding the appellate issue was not preserved for review. ECF No. 16-5. On July 9, 2013, the South Carolina Court of Appeals issued a Remittitur. ECF No. 16-6.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on November 19, 2013 (2013-CP-23-06255). App. 202-13. Petitioner asserted the following allegations, recited verbatim, regarding his claims:

a) Ineffective assistant counsel that did violate my 5th, 6th and 14th Amendments to the United States Constitution.
b) Prosecutorial misconduct that did violate my 14th Const. Amend.

App. 531. Additionally, Petitioner alleged the following facts related to his claims:

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF No. 16-1 in this habeas matter.

a) Counsel failed to make timely objections throughout, investigate, call relevant witnesses, request necessary jury instruction, and failed to prepare defendant to testify as requested by defendant.

b) State failed to correct false evidence known to be such by State.

*Id.* Senior Assistant Deputy Attorney General Karen Ratigan filed a Return on behalf of the State on May 28, 2014. App. 209-13. A PCR hearing convened on October 21, 2014, before the Honorable Letitia H. Verdin. App. 214-37. Petitioner was present and represented by Attorney Mills Ariail; Attorney Ratigan appeared on behalf of the State. *Id.* Petitioner and trial counsel Sullivan testified during the hearing. *Id.* In an Order filed November 30, 2010, the PCR court denied Petitioner's PCR Application in full, based on the following allegations and making the following findings of fact and conclusions of law:

## ALLEGATIONS

In this application, the Applicant alleges that he received ineffective assistance of counsel and that during trial the Assistant Solicitor committed prosecutorial misconduct.

Regarding the ineffective assistance of counsel claim, the Applicant particularly alleges the following:

a. Failure to make timely objections throughout the course of the trial;
b. Failure to fully investigate and call relevant witnesses;
c. Failure to adequately cross-examine;
d. Failure to request a necessary jury instruction; and
e. Failure to properly prepare the Applicant to testify as requested.

During his PCR hearing, the Applicant proceeded solely on his ineffective assistance claim, particularly items (b) and (e).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2013).

### Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 686 (1984); Porter v. State, 368 S.C. 378, 629 S.E.2d 353, 356 (2006). Regarding the first prong, the Applicant must in essence show that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry v. State, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland, 466 U.S. at 686).

Furthermore, the decisions and advice of trial counsel should be assessed for reasonableness under all the circumstances, with heavy deference given to counsel's judgment. Simpson v. Moore, 367 S.C. 587, 597 627 S.E.2d 701, 706 (2006). A criminal defense attorney has a duty to conduct a reasonable investigation so that he may discover all reasonably available mitigation evidence, as well as any reasonably available evidence tending to rebut evidence produced by the state. McKnight v. State, 378 S.C. 33, 46, 661 S.E.2d 354, 361 (2008). There is a strong presumption that adequate assistance of counsel was rendered, and that reasonable care was exercised – particularly in the arena of professional judgments. Ard v. Catoe, 372 S.C. 318, 331, 642 S.E.2d 590, 597 (2007).

    **a. Failure to make timely objections throughout the course of the trial.**

An examination of the trial record reveals that Applicant's trial counsel made timely and appropriate objections throughout the course of the proceeding. During the PCR hearing, the Applicant did not point to any specific instance in which his counsel failed to object. The PCR Application provides no further evidence on this subject. To the extent that the Applicant in his application for PCR was referring to the issues raised in his direct appeal, this Court finds that his

arguments are unpersuasive. Therefore, the Applicant has failed to meet his burden of proof on this issue.

### b. Failure to fully investigate and call relevant witnesses.

The Applicant claims that witnesses existed who could have provided an alibi, or who could have called the credibility of the State's witnesses into question. Additionally, the Applicant claims that there was a potential witness who was in the courtroom throughout his trial who would have testified that the Applicant had taken no part in the planning of the armed robbery, though he was present when it occurred. However, the other witness was not disclosed to Applicant's trial counsel and during his PCR hearing the Applicant admitted that he did not know the whereabouts of this witness.

The Applicant's trial counsel claimed that the Applicant wanted to provide an alibi, but had never received a name of such a witness. Additionally, trial counsel's examination of the State's discovery materials did not reveal any other possible witnesses. Trial counsel further testified that the Applicant's written confession of the crime had a substantial effect upon his investigation and subsequent trial strategy. In light of these facts, this Court finds that the Applicant failed to meet his burden of proving that his trial counsel failed to adequately investigate and call additional witnesses.

### c. Failure to adequately cross-examine

The Applicant claims that his trial counsel did not adequately demonstrate the bias of the State's witnesses during the course of the trial. He alleges that at least one of the State's witnesses was offered a reduced sentence in exchange for his testimony at trial, and this point should have been more prominently brought out at trial. An examination of the trial transcript reveals that trial counsel conducted a cross examination of all the State's witnesses. (Trial Tr. 56-58, 63-64, 71-72, 81-87, 107-24, 158-66.) Further, these cross examinations focused on the witnesses' credibility and inconsistent statements. (E.g., Trial Tr. 107-24.) A specific agreement, if one existed, was not brought out during the cross examination of any witness.

The Applicant's trial counsel testified at the PCR hearing that he felt that each witness' credibility had been sufficiently impeached. Trial counsel further testified that he did not recall any deal being made with a witness who testified at trial. This Court finds that such determinations relating to cross examination strategy are entitled to strong deference in accordance with Simpson v. Moore, 367 S.C. at 597, 627 S.E.2d at 706. In light of the record contained in the trial transcript and the testimony presented at the PCR hearing, this Court finds no error in trial counsel's cross examination of the State's witnesses.

### d. Failure to request a necessary jury instruction

The Applicant claims that his trial counsel did not request a necessary jury instruction for his case. However, the trial transcript reflects that at the appropriate time trial counsel requested that the jury be charged with accessory after the fact in addition to or in lieu of the armed robbery charge. (Trial Tr. 166-67, 169.) The trial Court denied the Applicant's request on the grounds that it was not a lesser included offense to the indicted charge. (Trial Tr. 169.) The Applicant's trial counsel noted his objection to this decision on the record, and the Court continued to discuss the charge. (Id.) This issue was not raised during the Applicant's PCR hearing. Further, there is no indication of what jury charge should have been requested by the Applicant's trial counsel. This Court's examination of the trial record does not yield any further information as to an essential jury charge which was not requested or used in this case.

In the absence of any evidence supporting this contention, this Court finds that the Applicant has failed to meet his burden of proving that an additional jury instruction should have been requested. This Court further notes that while trial attorneys may request particular jury charges, the Court ultimately determines which charges to include or to exclude. Therefore, PCR will not be granted on this ground.

### e.  Failure to properly prepare the Applicant to testify as requested.

The Applicant claims that he told his attorney that he wished to testify at trial, and that he wished to be prepared for this testimony by his attorney. However, there is no evidence of this request in the trial transcript, and nothing presented at the PCR hearing supports this claim. After the presentation of the State's case, the trial Court discussed with the Applicant his constitutional right to testify in his own defense. (Trial Tr. 167.) The Court then permitted the Applicant to take a twenty minute break to discuss the merits of testifying with his trial counsel. (Trial Tr. 168.) After this break, the Defendant indicated that he did not wish to testify, and confirmed that he had been given adequate time to make this decision and that he fully understood his decision. (Trial Tr. 168-69.)

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed wither (sic) errors or omissions in his representation of the Applicant. This Court also finds that the Applicant has failed to prove the second prong of Strickland – that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier, 351 S.C. at 389, 570 S.E.2d at 174.

## Prosecutorial Misconduct

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's remarks or conduct were, in fact, improper, and that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial. 21 Am. Jur. 2d <u>Criminal Law</u> § 429 (2014). In South Carolina, prosecutorial misconduct may occur through intentional or unintentional conduct of the State's attorney. <u>State v. Inman</u>, 395 S.C. 539, 559, 720 S.E.2d 31, 42 (2011). Where prosecutorial misconduct is identified, a court must take steps to cure the error. The prejudicial effect of prosecutorial misconduct is determined by (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court. <u>Inman</u>, 395 S.C. at 565, 720 S.E.2d at 45.

The Applicant claims that the State failed to correct false evidence that it knowingly presented at trial. However, the Applicant provided no other evidence to support this contention. Additionally, this Court finds no evidence of prosecutorial misconduct within the trial transcript. Therefore, the Applicant has not proved that prosecutorial misconduct occurred, and he is not entitled to post-conviction relief.

### All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient and the Applicant was not prejudiced by Counsel's representation. Furthermore, this Court finds no evidence of prosecutorial misconduct. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED:**

1. That the application for post-conviction relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the Respondent.

App. 238-45. Deputy Chief Appellate Defender Wanda H. Carter filed a *Johnson*[2] Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 16-9. Therein, Petitioner presented the following issues for review: "Trial counsel erred in failing to call and present a particular witnesses (sic) at trial who would have presented favorable testimony in corroboration of petitioner's defense in the case." *Id.* at 3. The South Carolina Supreme Court denied the petition and granted counsel's request to withdraw. ECF No. 16-10. On November 23, 2015, the supreme court issued the Remittitur. ECF No. 16-11. This federal habeas Petition followed and was filed on December 29, 2015. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: The State Trial Court erred in not declaring a mistrial when counsel improperly elicited prejudicial character evidence.
> Supporting Facts: Petitioner was convicted of an offense that was to have taken place on January 9, 2009. Allegedly Petitioner and two others were to have robbed an apartment manager of monies at gunpoint.
>
> Petitioner was implicated in the crime by Donnell Hagood, Octavious Denise Hutchinson and Timothy Brown.
>
> Hagood testified he was present during the robbery. Hagood is also charged with armed robbery and conspiracy. Hutchinson was a girlfriend of Petitioner's roommate Timothy Brown. Hutchinson testified that she overheard Petitioner talk about "a lick."
>
> Brown testified that he too overheard Petitioner discuss "a lick", and also testified that the car that was identified as being present at the scene of the incident belonged to him and that he loaned the car to Petitioner.

---

[2] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

During cross-examination of Hagood, trial counsel elicited the following highly prejudicial testimony:

Q. You told Officer Fortner that prior to this -- this happened on 1-9-09, the Dixie Estates?
A: Yes, sir.
Q: You said in September of '08, Scoop (Petitioner) and Josh Carter Scoop's brother, and your cousin, you robbed a couple of guys at a motel; is that correct?
A: Yes, sir.
Q: Ya'll split up $300?
A: Yes, sir.
Q: You said in October, you and Scoop and your cousin Terrance went to a lady's house and got $1800 and 30 to 32 grams of crack cocaine. You told that didn't you?
A: Yes, sir.
Q: You told him in the middle of October of 08 that you and Scoop (Petitioner) and McDenny talking about taking down some drug dealer so you and your cousin went over to the house and got into a shootout and ya'll got away?
A: Yes, sir.

Petitioner submits the trial court should have immediately declared a mistrial sua sponte as this highly prejudicial character evidence was damaging to Petitioner's right to a fair trial.

The evidence of prior bad acts was inadmissible and totally irrelevant to the crime for which Petitioner was on trial for.

Trial counsel improperly elicited an unadjudicate offense testimony that offered an improper basis for the jury to convict Petitioner. The prejudice here was unduly prejudicial to Petitioner since this testimony tended to suggest that Petitioner was not only violent but also was extensively involved in drugs. The Court should have sua sponte declared a mistrial as the evidence elicited by trial counsel was not connected too, nor did it establish relevant evidence of the underlying offense for which Petitioner was not on trial for.

Petitioner is entitled to federal habeas relief on this issue as the prejudice incurred is overwhelming in that it was denied Petitioner his right to a fair trial. ECF No. 1 at 5; ECF No. 1-1 at 2-3.

GROUND TWO: Trial counsel erred in failing to call and present a witness during trial who would have presented favorable evidence.
Supporting Facts: During trial Krystal Wells testified that she was working in the leasing office at Dixie Estates mobile home Trailer Park at 4 pm. on January 8, 2009 when two guys with bandanas tied around their faces and guns entered asking "where is it at?" Wells stated that she knew "it" meant the money, so she gave them the envelope containing the rent money. The men took the money and fled to a blue car where there was a third person (driver) waiting to drive off. Wells managed to get the tag number and immediately called police.

Donnell Hagood testified for the State. Hagood testified that that Petitioner drove to his house and picked him up on January 8, 2009, and they went and picked up Dee, AKA Black, and rode to Dixie Estates. While there Hagood said he stood outside the door, while Dee went in with a gun, which he aimed at Wells and got the money and they all fled. Hagood said that Petitioner told him (- Hagood to go inside the trailer office and accomplish what was done.

Brown and Hutchinson both testified that they were living with Petitioner in January 2009 and recalled Petitioner making a statement regarding "a lick."

Officer Michael Fortner took a statement from Petition who explained that he (petitioner) didn't realize what Hagood and Dee had planned. The statement can be seen in Petitioner's petition for writ of certiorari brief at page 5.

During the PCR hearing Petitioner testified that trial counsel wanted last closing arguments and therefore refused to present the testimony of Petitioner's cousin by the name Poole, who would verify that Petitioner did not participate in or plan a robbery, and that the events that occurred were not planned and that Hagood and Hutchinson lied on the stand when they testified otherwise

Counsel testified that he did not recall Petitioner asking him to contact Poole, and that he did not contact any witnesses regarding the robbery. Counsel further testified that he did not remember the witness Petitioner wanted to appear at trial on behalf of the defense.

The PCR court denied relief finding that Petitioner's statement placed him at the scene. Petitioner would submit Poole would have been able to corroborate Petitioner's statement and theory of the case, which was that he was only present and knew nothing of Dee and Hagood's plans to commit the robbery. Petitioner would submit he was denied the effective assistance of counsel when counsel denied him his right to present witnesses in his favor for his defense. Petitioner is entitled to federal habeas relief on this issue.  ECF No. 1 at 7; ECF No. 1-1 at 4-5.

GROUND THREE: Trial counsel was ineffective for failing to impeach a State's witness about an agreement received from the State.

Supporting Facts: At the onset of the PCR hearing Petitioner advised the PCR Court that he needed witnesses and discovery. App. 218, L. 2-10. The PCR Court asked PCR if he was ready to proceed any way? App. 218, L. 11-21.

A that time the PCR Court advised Petitioner that: "here is what we are going to do, we are going forward with it. If there is something in listening to it that I feel like we need to supplement the transcript here today or the record here today, then I will ask that that be supplemented at a later time. I won't rule until I get it. App. 218, L. 22-p. 219, L.5.

During the PCR hearing, Petitioner testified he had written the Solicitor Judy Munson to determine whether or not Donnell Hagood in fact was offered a deal to testify, App. 221, L. 19-24. Petitioner testified that during the trial the solicitor office said that they did <u>not</u> offer Hagood a deal. Petitioner also testified that he had documentation proving the State offered Hagood a deal, attached Exhibit (A). Petitioner testified that counsel should have adequately cross-examined Hagood regarding the State's deal.

During trial Donnell Hagood testified for the State and the following colloquy was recorded:

Q. What has the solicitor's office offered you in order to get you to testify?
A: Nothing.
Q: What promises or threats have been made to you by anybody to get you to testify?
A: None, ma'am.
App. 88, L.3-8.

As is seen in the above recorded colloquy during trial Hagood testified that the State hadn't promised him anything. Exhibit (A) attached hereto directly refutes Hagood's sworn testimony, which was clearly <u>false</u> in comparison to Exhibit (A) the State agreement with Hagood. The Solicitor should have corrected this false testimony before the jury. This argument is in direct correlation with Ground Four (Prosecutorial Misconduct) (emphasis supplied and original).
During the PCR hearing the Assistant Attorney General Ratigan questioned trial counsel regarding Hagood's deal and the following exchange was recorded:

Q. Speaking of Hagood, do you have any information that the State had made him any kind of deal or offer prior to trial?
A: I think someone may have said he wasn't promised anything. I don't recall what he ended up getting or anything.
Q: You don't have any information, just in your recollection --
A: I didn't know he was promised anything, no. If I would have jumped on it. I think Judy (solicitor), opened up whether he had been promised anything.

App. 232, L.7-17

As is seen in the above counsel candidly testified that he wasn't aware of any deal offered by the State. This admition derectly supports Petitioner's contentions regarding trial counsel's complete failure to investigate the case. Trial counsel could have as easily obtained exhibit (A) as Petitioner did, that is by contacting the Solicitor's Office. Which brings into question the prosecution misleading the jury when questioning Hagood. This issue raises a structural defect that compels this Court to consider the substance of Exhibit (A) in conjunction with Grounds

Three and Four in the interest of justice. Petitioner is entitled to federal habeas relief on this issue. ECF No. 1 at 8; ECF No. 1-1 at 6-8.

GROUND FOUR: Prosecutorial Misconduct.
Supporting Facts: During trial the State presented the testimony of Donnell Hagood against Petitioner. Hagood was asked by the Prosecution if he was ever made any promises for his testimony to which he said no. tr.88, L.3-8. Here the prosecution was presented falese (sic) testimony to the jury, see attached exhibit (A). The State should have corrected this false testimony before the jury in that Hagood's credibility was crucial before the jury. ECF No. 1 at 10.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed

by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.  Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011);

*Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the

facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1)

15

focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the

state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion

17

requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply

with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

20

IV.    Analysis

As an initial matter, Respondent maintains that only one of Petitioner's habeas claims, Ground Two, has been properly preserved for review. ECF No. 16 at 14-15. Respondent maintains that Ground One may not be reviewed on the merits because Petitioner failed to raise the issue to the highest South Carolina appellate court. *See id.* Respondent concedes that "ground two is preserved for habeas review on the merits." *Id.* at 15. Respondent argues that Grounds Three and Four are not reviewable because Petitioner failed to raise these Grounds in his PCR appeal. *See id.*

1.  Ground One:  State Court Error in not Granting Mistrial

In his Response, Petitioner argues that Respondent's assertion concerning Ground One is "baseless and <u>must</u> be rejected" because the South Carolina Court of Appeals found the issue was not preserved for review. ECF No. 24 at 6-7.  Based on the appellate court's finding, Petitioner argues "it would be illogical for Petitioner to petition for rehearing and then attempt to present the [unpreserved] issue to the State Supreme Court for review." *Id.* at 7. Further, Petitioner argues Ground One is reviewable under *Martinez v. Ryan*, 566 U.S. 1 (2012).[3]

Ground One is procedurally defaulted because Petitioner did not pursue his direct appeal after it was dismissed by the South Carolina Court of Appeals.  To be ripe for habeas review, Petitioner was required to exhaust his state remedies by petitioning for a writ of certiorari with the South Carolina Supreme Court; however, he did not. *See* 28 U.S.C. § 2254(a)-(b). Therefore, this issue is procedurally barred from habeas review. *See Murray*, 477 U.S. at 533. However, Petitioner argues he is excused from any procedural default based on the holdings in *Martinez v. Ryan*.

---

[3] The undersigned notes the following is the correct citation for the referred case: *Martinez v. Ryan*, 132 S. Ct. 1309, 1312 (2012).

In *Martinez*, the Supreme Court reviewed a case where an Arizona state prisoner petitioned for writ of habeas corpus. 132 S. Ct. at 1310. Arizona, like South Carolina, requires "claims of ineffective assistance at trial to be reserved for state collateral proceedings." *Id.* at 1314. Martinez's attorney in his state collateral proceeding filed a notice for PCR, however, she later filed a statement "asserting she could find no colorable claims at all." *Id.* Ultimately, Martinez's PCR action was dismissed. *Id.* Later, with the assistance of new PCR counsel, Martinez filed a second notice for PCR where he raised several ineffective-assistance-of-trial-counsel claims. *Id.* However, the Arizona trial and appellate courts denied Martinez relief because he failed to raise his second PCR claims in the first PCR. *Id.* In his district court habeas petition, Martinez raised his ineffective-assistance-of-trial-counsel claims. *Id.* There, he argued that he should overcome any procedural hurdles related to these claims because his first PCR counsel was ineffective in failing to raise any claims in the first PCR action. *Id.* at 1314-15.

There, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. In its analysis, the *Martinez* Court recognized that *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), held:

> [A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims.

*Id.* at 1317. If a state requires a prisoner to raise ineffective assistance of trial counsel in a collateral proceeding, the *Martinez* Court determined a prisoner may establish cause for a default of an ineffective-assistance claim in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial [and 2] where appointed

22

> counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. The undersigned finds that *Martinez* could be broadly construed to excuse the procedural default of Ground One because it was not raised as an ineffective-assistance of counsel issue during Petitioner's PCR. To overcome the default, *Martinez* requires Petitioner to demonstrate that the underlying ineffective-assistance-of-counsel claim is substantial or has merit. *See id.*

Petitioner asserts his trial counsel elicited prejudicial character evidence. The only reasonable approach PCR counsel could have taken to raise Ground One during collateral review would be to argue trial counsel was ineffective in pursuing this line of questioning.  However, this PCR Ground would not have been viable for several reasons. As Respondent represents, it was a matter of trial strategy for Petitioner's trial attorney to question the witness at issue in the manner he was questioned.  *See Spencer v. Murray*, 18 F.3d 229, 234 (4th Cir. 1994) ("Under *Strickland*, we defer to counsel's sound trial strategy decisions."). Specifically, Respondent maintains that the testimony at issue was "introduced by defense counsel for [Petitioner's] benefit during trial [and] Petitioner's counsel elected to introduce the complained-of testimony as a method of impeaching the co-defendant." ECF No. 16 at 21. Therefore, the undersigned finds that *Martinez* does not excuse the procedural default of Ground One because this Ground is insubstantial and lacks merit. As a result, the undersigned finds that Ground One should be dismissed.

> 2.     Ground Two:  Ineffective Assistance of Counsel/Failure to Call and Present a Witness who would have presented favorable testimony

In his Second Ground, Petitioner contends that he was denied effective assistance of trial counsel because trial counsel failed to subpoena his cousin, Mr. Poole, as a witness. ECF No. 1-1. Petitioner maintains that his cousin "would verify that Petitioner did not participate in or plan a robbery, and that the events that occurred were not planned and that Hagood and Hutchinson lied on the stand when they testified otherwise." *Id.* Respondent argues Petitioner's Ground Two argument fails because Petitioner cannot "demonstrate that the PCR court unreasonably interpreted the facts in relation to this issue or unreasonably applied the applicable federal law." ECF No. 16 at 24. Moreover, Respondent maintains that Petitioner "failed to proffer any testimony which would help the court determine whether the alleged missing witness would have in fact provided an alibi or worked to discredit Petitioner's co-defendant testimony." *Id.*

In his Response, Petitioner maintains that his PCR counsel "moved for a continuance at Petitioner's request" because Petitioner needed a witness to come testify on his behalf. ECF No. 24 at 14. Petitioner argues:

> [H]e was prevented from presenting [his] witness at the PCR hearing through circumstances beyond his control, [ineffective assistance of PCR counsel]; and the PCR Court's inadequate corrective process, as was seen the PCR Court denied a continuance to locate the witness and also told Petitioner he would allow the transcript to be supplemented at a later time should that evidence be needed and further would not rule until such time.

*Id.* at 15. Petitioner contends that he is entitled to "an evidentiary hearing on this issue to 'fill in the blanks' of the State Court proceeding" or a grant of writ of habeas corpus. *Id.* at 16.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an

objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

During his PCR hearing, as Petitioner represented, PCR counsel represented to the PCR court that Petitioner wanted to move for a continuance because he was not prepared to go forward with the case. App. 217. Petitioner stated:  "The witnesses I need, I can get them. The witnesses I need for the case, I didn't notify them and he wasn't able to notify them. Also, I need complete discovery. I asked for discovery."  App. 218.  However, PCR counsel stated that he had received information on the PCR matter and was ready to proceed. *See id.* In Response to Petitioner's request, the PCR court ruled:

> [W]e are going to go forward with [the PCR matter]. If there is something in listening to it that I feel like we need to supplement the transcript here today or the record here today, then I will ask that that be supplemented at a later time. I won't rule until I get it.

*Id.* at 218-19.

Later, Petitioner testified that Mr. Poole, the witness Petitioner argues trial counsel should have called, was going to tell the jury that Petitioner did not participate in the robbery. App. 223. However, Petitioner agreed that Mr. Poole could not testify that Petitioner was not a "part of it" and was not in the car. *See id.* Specifically, during Petitioner's PCR testimony the following exchange occurred:

> Q:  He could not say that you weren't a part of it or in the car or anything like that?
> A:  He couldn't do that.
> Q:  Are you acknowledging that you were in the car?
> A:  I was in the car.

> Q; What you're saying is you didn't know what they were going to do?
> A: Correct.
> Q: Did Mr. – did you explain that to Mr. Sullivan?
> A: Yes.
> Q: Did you ask him to draw all of that out or trying to show that as a defense that you do not know what you were doing?
> A: Yes.
> Q: You didn't know this was going to happen?
> A: Yes.
> . . . .
> Q: So he would have tried to, I guess, help you with the testimony of Octavius Denise Hutchinson and then Tim Brown, is that right?
> A: It was showing that they were committing perjury basically.

App. 223-25. Petitioner also testified that he made a statement where he acknowledged that he was in the get-away car. App. 226. Petitioner testified that on the day of the PCR hearing he was unable to locate Mr. Poole but would be able to find him "[w]ith a little research." App. 227.

During direct examination, trial counsel Sullivan testified that he received discovery materials for Petitioner's case and reviewed them with Petitioner. App. 229. Trial counsel testified that he and Petitioner reviewed the statement Petitioner gave to police, and trial counsel explained to Petitioner that the statement placed him at the scene of the crime. App. 230. When asked if Petitioner asked trial counsel to contact any witnesses concerning the armed robbery, trial counsel responded: "No. He admitted that he was present. His position was he wasn't actively involved in it." App. 233. On cross-examination, the following exchange occurred:

> Q: [W]as there anybody that would have testified, not really an alibi but a witness who said he wasn't participating or planning, not planning it?
> A: I don't recall anybody that would say that [Petitioner] didn't plan it. He said he didn't.
> Q: You remember any other witnesses he gave you?
> A: No.

App. 235.

The undersigned agrees with the PCR court's finding that trial counsel did not err in failing to locate and call Mr. Poole, Petitioner's cousin, as a witness. *See* App. 241. In particular,

the undersigned notes the PCR court's finding that Petitioner did not disclose the name of a witness who could testify during his trial. *See id.* Furthermore, the undersigned has reviewed the trial transcript and agrees with the PCR court's finding that, based on the evidence against Petitioner, no omitted testimony was likely to have had an effect on the outcome of Petitioner's criminal trial. Accordingly, the undersigned finds Petitioner has failed to demonstrate either *Strickland* prong.

The undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Therefore, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Two is without merit and should be dismissed.

> 3.   Ground Three—Ineffective Assistance of Counsel for Failing to Impeach; and Ground Four—Prosecutorial Misconduct

As previously mentioned, Respondent argues that Grounds Three and Four are not reviewable because Petitioner failed to raise these Grounds in his PCR appeal. ECF No. 16 at 15. Petitioner argues any purported procedural default of Grounds Three and Four is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012).

*Martinez* does not excuse the procedural default of Grounds Three and Four. These Grounds were raised in petitioner's initial collateral review proceedings but were not raised in his PCR appeal. *See* App. 204; App. 238-45; ECF No. 16-9. In his PCR appeal, Petitioner's appellate counsel raised the issue of whether trial counsel was ineffective "in failing to call and present a particular witnesses (sic) at trial who would have presented favorable testimony in corroboration of petitioner's defense in the case." ECF No. 16-9. Because neither Ground Three

nor Four were presented in his PCR appeal, neither are properly before the court. *See, e.g.*
*Pickard v. Connor*, 404 U.S. 270, 278 (1971) ("We simply hold that the substance of a federal
habeas corpus claim must first be presented to the state courts."); *Baker v. Corcoran*, 220 F.3d
276, 288 (4th Cir. 2000) ("[A] federal court may not grant a writ of habeas corpus to a petitioner
in state custody unless the petitioner has first exhausted his state remedies by presenting his
claims to the highest state court."); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487,
at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this
claim to the state's highest court in a procedurally viable manner when he had the opportunity,
and the state courts would find any attempt to raise the claim now to be procedurally improper,
then the claim is procedurally barred from review in federal habeas corpus"). Moreover,
*Martinez* does not stand for the proposition that an attorney's failure to raise issues in an *appeal*
of a collateral review proceeding may establish cause to excuse a procedural default. *See e.g.,*
*Crowe v. Cartledge*, No. 9:13–CV–2391–DCN, 2014 WL 2990493 at *6 (D.S.C. July 2, 2014)
("[I]neffective assistance of PCR appellate counsel is not cause for a default."); *Cross v.*
*Stevenson*, No. 1:11–CV–02874–RBH, 2013 WL 1207067 at *3 (D.S.C. Mar. 25, 2013)
("*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal
establishes cause for a procedural default.").

Therefore, the undersigned finds that *Martinez* does not excuse the procedural default of
Grounds Three and Four. As a result, the undersigned finds that Grounds Three and Four should
be dismissed.

V.      Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 17, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

November 10, 2016                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**